IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GEORGE W. HARDY,                    *
                                    *
        Plaintiff,                  *
                                    *
        v.                          *        CV 117-172
                                    *
GEORGIA DEPARTMENT OF               *
CORRECTIONS, et al.,                *
                                    *
        Defendants.                 *

_____

**O R D E R**

_____

Before the Court is Defendants' Partial Motion to Dismiss
Plaintiff's Second Amended Complaint. (Doc. 43.) For the reasons
contained herein, Defendants' motion is **GRANTED IN PART** and **DENIED
IN PART**.


## I. BACKGROUND

Defendants removed this matter from the Superior Court of
Richmond County, Georgia. (Doc. 1.) Subsequent to removal,
Plaintiff has amended his complaint twice, and his Second Amended
Complaint ("Complaint") is the operative pleading. (Compl., Doc.
42.) The Complaint alleges a federal cause of action pursuant to
42 U.S.C. § 1983 for deliberate indifference to serious medical
need (Count I) and state law claims for professional negligence
(Count II); negligence (Count III); negligent infliction of

emotional distress (Count IV); and negligent hiring, retention, training, and supervision (Count V). (Id. ¶¶ 41–91.) Plaintiff further claims punitive damages.[1] (Id. at Prayer for Relief.)

## A. Confinement and Medical History

Plaintiff is confined at the Georgia Diagnostic and Classification Prison ("GDCP") in Jackson, Georgia, and was held at GDCP at all times except as otherwise stated. (Id. ¶ 17.) As a result of his history with cardiovascular disease and type II diabetes, Plaintiff is prescribed Plavix, a medication intended to prevent the formation of blood clots. (Id. ¶¶ 18, 19.) In 2015, it was determined that Plaintiff required surgery to remove a salivary gland. (Id. ¶ 19.)

## B. Amputation

On June 24, 2015, Plaintiff was transported to Augusta State Medical Prison ("ASMP") to undergo the salivary gland surgery. (Id. ¶ 22.) Prior to his surgery on July 2, 2015, Plaintiff noticed numbness in his right foot eventually leading to leg pain. (Id. ¶ 23.) Over more than two weeks following surgery, Plaintiff continued to experience leg pain and numbness.[2] (Id. ¶¶ 24, 26–28, 30–33, 35.) After Plaintiff's return to GDCP, medical staff

---

[1] Plaintiff generally requests punitive damages without specifying which claims entitle him to punitive damages. Although Defendants move to dismiss Plaintiff's claim for punitive damages in connection with the state law claims, Defendants do not make the same motion in regard to Plaintiff's Section 1983 claims. Therefore, the Court only addresses the punitive damages as they relate to the state law claims.

[2] Plaintiff also contends he experienced chest pain on at least one occasion. (Compl., ¶ 32.)

examined Plaintiff and discovered blood clots in his right leg and determined Plaintiff had contracted gangrene. (Id. ¶ 36.) Shortly thereafter, at the Atlanta Medical Center, Plaintiff's leg was amputated six inches above the knee. (Id. ¶ 37.)

## C. Personnel and Alleged Conduct

Plaintiff alleges that the stoppage of his Plavix prescription primarily caused the blood clots, gangrene, and amputation. (See id. ¶¶ 19-22, 25, 51-52, 55-56, 59-60, 70-71, 78, 87-88.) Plaintiff blames a host of entities and personnel for the loss of his leg. (See id. ¶¶ 5-14.) For convenience, the Court discusses the alleged conduct of the various personnel in turn.

### 1. Edward Hale Burnside II, M.D. and Mary Gore, R.N. (GDCP)[3]

Nurse Gore ordered the suspension of Plaintiff's Plavix prescription in anticipation of Plaintiff's salivary gland surgery. (Id. ¶ 19.) Prior to his transfer and surgery, Plaintiff expressed concerns about the suspension of his prescription to Dr. Burnside. (Id. ¶ 20.) Dr. Burnside informed Plaintiff that he need not worry and ASMP would tend to his issues. (Id.) Plaintiff alleges that neither Nurse Gore nor Dr. Burnside attempted to notify ASMP of Plaintiff's prescription. (Id. ¶ 21.) Upon

---

[3] Dr. Burnside, Nurse Gore, and Warden Chatman are collectively referred to as the "GDCP Individual Defendants."

Plaintiff's post-operation return to GDCP, Dr. Burnside discovered the blood clots and diagnosed Plaintiff with gangrene. (Id. ¶ 36.)

## 2. Warden Bruce Chatman (GDCP)

Plaintiff alleges that Warden Chatman failed in his duties to supervise personnel (id. ¶¶ 60, 61, 87, 89), train personnel (id. ¶¶ 61, 89), hire personnel (id. ¶¶ 61, 89), terminate personnel (id. ¶¶ 61, 89), and promulgate and enforce policies (id. ¶¶ 60, 63, 79, 87) at GDCP.

## 3. Wardens Stan Shepard and Betty Lee McGrew (ASMP)

While under ASMP's care, Warden Shepard purportedly threatened to relocate Plaintiff for yelling out in pain. (Id. ¶ 29.) Plaintiff asserts Warden Shepard's warning impacted Plaintiff's treatment. (Id. ¶ 62.)

Additionally, Plaintiff expressed his distress to Warden McGrew on three occasions. (Id. ¶¶ 24, 26, 29.) Plaintiff states that Warden McGrew was aware of Plaintiff's medical history, his prescription for Plavix, and the subsequent suspension of that prescription. (Id. ¶ 25.)

Finally, Plaintiff makes the same allegations against Wardens Shepard and McGrew as those made against Warden Chatman. (Id. ¶¶ 60, 61, 64, 79, 87, 89.)

4

### 4. ASMP Medical Personnel[4]

Plaintiff alleges that upon arriving at ASMP, he informed Dr. Kimberly Fountain of the fact that he was no longer taking Plavix, and his fears were ignored. (Id. ¶ 22.) Further, Plaintiff asserts that throughout his time at ASMP, the tending medical staff was aware of Plaintiff's medical history, his prescription for Plavix, and the subsequent suspension of that prescription. (Id. ¶ 25.) Plaintiff notified ASMP medical staff of his numbness and pain on multiple occasions. (Id. ¶¶ 23-24, 26-33.) In response, ASMP medical staff provided Plaintiff Percocet to assist with the pain (id. ¶¶ 31-32) and warm compresses (id. ¶¶ 26-27). ASMP medical staff externally examined Plaintiff's leg finding no problems. (Id. ¶ 33.) The treating staff at ASMP did not consult with other medical providers or perform scans of the leg. (Id. ¶¶ 26, 34.)

### 5. All Individual Defendants

Plaintiff contends that throughout Plaintiff's treatment, the Individual Defendants were aware that Plaintiff was prescribed Plavix for his history of cardiovascular and clotting issues. (Compl., ¶ 51.) Plaintiff continues that the Individual Defendants knew Plaintiff ceased taking Plavix prior to his surgery and refused to resume his Plavix treatment following his surgery

---

[4] Wardens Shepard and McGrew and the ASMP medical staff alleged to have treated Plaintiff are collectively referred to as the "ASMP Individual Defendants," and collectively with the GDCP Individual Defendants, the "Individual Defendants."

notwithstanding his numerous complaints. (Id. ¶¶ 51, 53.) Finally, despite the Individual Defendants' knowledge of Plaintiff's medical and medication history, awareness that Plaintiff's medication was suspended, and receipt of numerous complaints from Plaintiff regarding his discomfort, the Individual Defendants deprived Plaintiff of the medication and care for a possible clotting issue. (Id. ¶¶ 51-53.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6) — failure to state a claim upon which relief can be granted — Defendant moves for partial dismissal of the Complaint on a number of grounds. The Court addresses the Parties' competing positions regarding dismissal herein.

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the Complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombley</u>, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,[5] to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." <u>Id.</u> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." <u>Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).

---

[5] The Court must accept all well-pleaded facts in the Complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1261 (11th Cir. 2006).

### III. DISCUSSION

The Court begins with Plaintiff's federal claim — a violation of 42 U.S.C. § 1983 for deliberate indifference to serious medical need as protected by the Eighth Amendment of the United States Constitution.

### A. Section 1983 Deliberate Indifference to Serious Medical Need — Count I

Defendants argue that Plaintiff's Section 1983 claims should be dismissed as to all Defendants because (1) the Eleventh Amendment grants immunity to the Georgia Department of Corrections ("GDC"), the Board of Regents of the University System of Georgia ("BOR"), and the Individual Defendants in their official capacities; (2) Plaintiff fails to state a claim for a Section 1983 violation; and (3) Defendants are entitled to qualified immunity in their individual capacities. (Br. Supp. Partial Mot. to Dismiss, Doc. 43-1, at 5-23.)

#### 1. Eleventh Amendment Immunity

Plaintiff brings the present action against two government agencies and the Individual Defendants in both their official and individual capacities. Defendants argue that Eleventh Amendment immunity bars Plaintiff's Section 1983 claims against state agencies and the Individual Defendants in their official capacities. (Id. at 5.) Plaintiff does not dispute that, generally, he may only assert a Section 1983 claim against the

8

Individual Defendants in their individual capacities. (Opp'n to Partial Mot. to Dismiss, Doc. 45, at 5-6.) Instead, Plaintiff argues that Defendants are not entitled to Eleventh Amendment protection for two reasons: (1) Plaintiff's Complaint asserts both federal and state law claims, and (2) The present action was initially filed in state court and removed to federal court. (Id.) The Court finds neither argument persuasive. Thus, Eleventh Amendment immunity prohibits Plaintiff's Section 1983 claims against Defendant GDC, Defendant BOR, and the Individual Defendants in their official capacities.

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Controlling interpretations of the Eleventh Amendment firmly "establish that an unconsenting [s]tate is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (citation and internal quotation marks omitted). Eleventh Amendment immunity equally applies to a state's agencies and departments. Id. Furthermore, Eleventh Amendment immunity "remains in effect when [s]tate officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985). The Eleventh

9

Amendment bars Section 1983 suits absent state waiver of immunity or congressional override. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). Plaintiff contends neither that Georgia has consented to suit under Section 1983 nor that congressional override permits the claim.

Plaintiff does assert, however, that this matter presents two exceptions to sovereign immunity. First, Plaintiff recognizes that although Graham acknowledged "[t]he [Supreme] Court has held that [Section] 1983 was not intended to abrogate a [s]tate's Eleventh Amendment Immunity," Graham was before the Supreme Court "as if it arose solely under [Section] 1983." (Opp'n to Partial Mot. to Dismiss, at 6 (citing Graham, 473 U.S. at 169 n.17).) Because he asserts both federal and state law claims, Plaintiff seems to argue that the reasoning in Graham, and Eleventh Amendment immunity in general, is inapplicable to the present case.

The Court is unfamiliar with, and Plaintiff offers no, Eleventh Circuit authority adopting Plaintiff's position. Courts in this Circuit have repeatedly found Eleventh Amendment immunity despite the action containing both federal and state law claims. See, e.g., Gray v. Royal, 181 F. Supp. 3d 1238, 1246–47, 1254–55 (S.D. Ga. 2016); Marzec v. Toulson, No. CV 103-185, 2007 WL 1035136, at *3, *8 (S.D. Ga. Mar. 30, 2007); Garnett v. Georgia, No. CV 106-032, 2007 WL 9701364, at *1-3 (S.D. Ga. Jan. 3, 2007). As a result, the Court concludes that Plaintiff's assertion of

state law claims has no bearing on whether the Eleventh Amendment protects two governmental entities and the Individual Defendants in their official capacities from Plaintiff's Section 1983 claims.

Second, Plaintiff argues that Defendants' removal waived Eleventh Amendment immunity. (Opp'n to Partial Mot. to Dismiss, at 6.) In support, Plaintiff directs the Court to Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613 (2002). (Id.) As the Eleventh Circuit has stated, Plaintiff's reasoning misinterprets Lapides. Lapides "held that a [s]tate's removal to federal court waives 'its immunity from a federal forum' — that is, its immunity from *suit*, not from liability." Page v. Hicks, 773 F. App'x 514, 518 (11th Cir. 2019) (emphasis in original) (quoting Stroud v. McIntosh, 722 F.3d 1294, 1302 (11th Cir. 2013)). In Stroud, the Eleventh Circuit concluded that Lapides does not apply to facts presently before this Court. 722 F.3d at 1302. Lapides addressed sovereign immunity in the context of a state law claim to which Georgia "has explicitly waived immunity from state-court proceedings." Id. (citing Lapides, 535 U.S. at 617). Therefore, Stroud determined Lapides is not controlling where the claim is federal and the state has not waived immunity protection as to that federal claim. Id. at 1299-1302.

Put another way, Stroud recognized two classes of Eleventh Amendment immunity. First, a state, and arms of the state, are immune from suit in federal court ("forum immunity"). Id. at 1302-

03. Second, a state is immune from liability as to certain claims ("claim immunity"). Id. In affirming dismissal of the plaintiff's federal Age Discrimination in Employment Act claim, Stroud found Lapides's reasoning as to waiver of forum immunity equally applicable when federal claims are involved. Id. at 1302. Thus, by removing the present action, the state actors waived immunity from suit in federal court. As to claim immunity, however, Stroud concluded removal did not constitute waiver. Similarly, although GDC, BOR, and the Individual Defendants in their official capacities waived forum immunity, they did not waive claim immunity under the Eleventh Amendment as to Plaintiff's Section 1983 claims. Finding Eleventh Amendment claim immunity applicable and no waiver of the constitutional protection, dismissal of the Section 1983 claims is proper as to BOR, GDC, and the individual defendants in their official capacities.[6]

---

[6] Additionally, the Section 1983 claims against BOR, GDC, and the Individual Defendants in their official capacities are appropriately dismissed because Section 1983 does not contemplate liability against them. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress . . . .

The United States Supreme Court has held that "neither a [s]tate nor its officials acting in their official capacities are 'persons' under [Section] 1983." Will, 491 U.S. at 71. Similar to states and their officials, state agencies are not "persons" as contained in Section 1983. Newton v. Duke Energy Fla., LLC, 895 F.3d 1270, 1278 (11th Cir. 2018).

## 2. Failure to State a Claim and Qualified Immunity

Defendants additionally move to dismiss Plaintiff's Complaint claiming that (1) Plaintiff fails to state a claim for deliberate indifference against the Defendants and (2) Individual Defendants in their individual capacities are entitled to qualified immunity. (Br. Supp. Partial Mot. to Dismiss, at 6-23.)

Qualified immunity is a judicially created affirmative defense under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For qualified immunity to apply, a public official first has to show she was "acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." Lumley v. City of Dade Cty., 327 F.3d 1186, 1194 (11th Cir. 2003) (citations omitted). To determine whether a government official was acting within the scope of her discretionary authority, courts consider whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [her] power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, the Parties do not dispute that the Individual Defendants were

acting within their discretionary authority, and the Court finds no reason to conclude otherwise.

Once a defendant establishes that she was "acting within [her] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Lumley, 327 F.3d at 1194; see also Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016) (applying same burden-shifting framework in Rule 12(b)(6) analysis). Accordingly, the Court must look to the Complaint to see if Plaintiff included sufficient facts demonstrating that the Individual Defendants are not entitled to qualified immunity. Bowen, 826 F.3d at 1319. In doing so, the Court must consider two issues: (A) "whether, taken in the light most favorable to [Plaintiff], the facts alleged show [Defendants'] conduct violated a constitutional right, and, ([B]) if so, whether the right was clearly established." Id. (citation and internal quotation marks omitted). Because the failure to state a claim argument overlaps with the first prong of the qualified immunity test, the Court analyzes them together. Keating v. City of Miami, 598 F.3d 753, 760 (11th Cir. 2010) ("At the motion to dismiss stage in litigation, 'the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined.") (quoting GJR Invs., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998)). Here, the constitutional right complained of

is an Eighth Amendment violation for deliberate indifference to a serious medical need.[7]

In Estelle v. Gamble, the United States Supreme Court, although not finding deliberate indifference, extended Eighth Amendment protections to medical care determining a prisoner has a "cognizable claim" when the prisoner "allege[s] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." 429 U.S. 97, 106 (1976). The Parties do not dispute that Plaintiff makes out a serious medical need. (Br. Supp. Partial Mot. to Dismiss, at 6 n.2.) Therefore, at this stage, only deliberate indifference is at issue.

As to the requirements to successfully state a claim for deliberate indifference, there is no dispute. Deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence." Dang ex rel. Dang v. Sheriff, Seminole Cty., 871 F.3d 1272, 1280 (11th Cir. 2017). Subjective knowledge demands that "the defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

---

[7] "The Eighth Amendment's ban on cruel and usual punishment is made applicable to the states by virtue of the Fourteenth Amendment." Carter v. Galloway, 352 F.3d 1346, 1347 n.1 (11th Cir. 2003) (citing Robinson v. California, 370 U.S. 660, 666-67 (1962)).

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–1100 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

In Eleventh Circuit decisions, deliberate indifference to medical needs has included: "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Also, "[a]llegations of a delay in medical care for 'serious and painful injuries' . . . can state a claim for a violation of the Eighth Amendment, especially where delay in treating a 'known or obvious' serious medical condition is unexplained." Granda v. Schulman, 372 F. App'x 79, 83 (11th Cir. 2010) (citing Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990)). But, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. Medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). Under his Section 1983 claims, the Court determines that Plaintiff fails to state a claim for relief against some Individual Defendants.

a. *Deliberate Indifference*

i. Defendants Chatman, Burnside, and Gore

The analysis begins with the GDCP Individual Defendants: Warden Bruce Chatman, Dr. Edward Burnside II, and Nurse Mary Gore. Plaintiff alleges that Dr. Burnside and Nurse Gore discontinued Plaintiff's Plavix prescription in preparation for surgery. The Complaint is void of any indication that stopping the Plavix prescription in preparation of surgery was medically improper. At that point, Defendant was transferred to ASPM and out of the direct care of the GDCP Individual Defendants. Upon returning to GDCP, the Complaint alleges that Dr. Burnside detected numerous blood clots, and Defendant was immediately transferred to the Atlanta Medical Center. The only wrongful conduct Plaintiff alleges against Dr. Burnside and Nurse Gore is their failure to advise ASMP "as to how long Plaintiff could safely be kept off Plavix and at what point after surgery he should be placed back on Plavix." (Compl., ¶ 21.) At the same time, Plaintiff alleges the personnel at ASMP knew that Plaintiff was prescribed Plavix and was not taking it.

Accepting Plaintiff's allegations as true, the conduct does not nearly rise to the level required for a constitutional claim. Based on Plaintiff's allegations, there was no subjective knowledge of risk because Dr. Burnside allegedly told Plaintiff that ASMP would handle his concerns regarding the Plavix

17

prescription. Although Plaintiff attempts to attribute to Defendants Burnside and Gore his complaints made to ASAP personnel concerning his leg, collective knowledge is not properly considered when evaluating a claim for deliberate indifference to serious medical need. Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). Properly analyzing the alleged conduct of Dr. Burnside and Nurse Gore as isolated from ASMP, Plaintiff has failed to state Section 1983 claims against Defendants Burnside and Gore.[8]

Moreover, Plaintiff alleges supervisory liability and failure to train against Defendants Burnside and Chatman. Plaintiff has not alleged facts sufficient to state a deliberate indifference claim for conduct occurring while Plaintiff was under the care of GDCP or showing that Defendants Burnside and Chatman possessed supervisory authority over persons at ASMP. Determining Plaintiff failed to state a deliberate indifference claim against Defendants Burnside and Gore, Plaintiff cannot state a claim against Defendants Burnside and Chatman for supervisory liability or failure to train. Dang, 871 F.3d at 1283 (supervisory liability requires underlying violation); Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008) (failure to train requires underlying violation).

---

[8] In addition to the conduct not reaching the level of a constitutional violation, the Court finds no clearly established law advising that the failure to note the discontinuance of a prescription is unlawful. Therefore, Dr. Burnside and Nurse Gore are also entitled to qualified immunity due to Plaintiff's failure to show the clearly established prong.

Accordingly, the GDCP Individual Defendants are entitled to qualified immunity.

ii. ASMP Medical Officials – Direct Actors

As for the ASMP medical personnel in their individual capacities, the Court concludes that Plaintiff's allegations survive dismissal. Defendants argue that, particularly in regard to the ASMP medical personnel, Defendants did not draw the inference that a substantial risk of serious harm existed. In light of the allegations contained in Plaintiff's Complaint, the Court disagrees.

Plaintiff alleges that the treating ASMP personnel were aware of Plaintiff's medical history; of his Plavix prescription; that he was no longer taking his Plavix prescription; that if he did not resume anti-clotting medication, Plaintiff was at risk of forming blood clots; and that the ASMP medical personnel deprived Plaintiff of his needed medication. These allegations make plausible that the ASMP medical personnel drew the inference that Plaintiff was at serious risk of forming blood clots without his medication. See Kothmann v. Rosario, 558 F. App'x 907, 911-12 (11th Cir. 2014) (affirming district court's denial of motion to dismiss medical indifference claim when complaint alleged the defendant knew of the plaintiff's hormone therapy to treat Gender Identity Disorder and refused to provide hormone therapy); Weeks v. Benton, 649 F. Supp. 1297, 1302-03 (S.D. Ala. Dec. 12, 1986)

(finding plaintiff stated a deliberate indifference to serious medical need claim when inmate died of heart attack after deprivation of necessary medication). The plausibility of the ASMP medical staff's knowledge of the risk is heightened when considering that Plaintiff repeatedly complained of his deteriorating condition and expressed concern regarding medication over a month's time. See Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989).

At this stage, the Court is required to accept Plaintiff's allegations as true. Although the Court agrees that misdiagnosis,[9] failure to apply certain diagnostic testing,[10] and a disagreement regarding course of treatment[11] are not grounds to state a Section 1983 claim for violation of the Eighth Amendment; knowledge regarding Plaintiff's prescription, the interference with this medication, and Plaintiff's repeated complaints that his condition was not improving permits a factfinder to infer that knowledge of the need for anti-clotting medication and the refusal to provide the anti-clotting medication constituted deliberate

---

[9] "[Medical personnel] cannot be held liable for failing to diagnose . . . colon cancer." McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999).

[10] "A medical decision not to order [certain diagnostic tests] does not represent cruel and unusual punishment." Estelle, 429 U.S. at 107.

[11] "'A simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim for deliberate indifference." Ross v. Corizon Med. Servs., 700 F. App'x 914, 916 (11th Cir. 2017) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)).

indifference.[12]  See McElligott v. Foley, 182 F.3d 1248, 1258-59 (11th Cir. 1999); Carswell v. Bay Cty., 854 F.2d 454, 457 (11th Cir. 1988).

### iii. Wardens Shepard and McGrew – Direct Actors

To the extent Plaintiff asserts direct liability against Defendants Shepard and McGrew, Plaintiff alleges sufficient facts to state a claim. Prison officials are required to take appropriate measures to ensure a prisoner receives adequate treatment. In doing so, prison officials "are entitled to rely on medical judgments made by medical professionals responsible for prisoner care." Williams v. Limestone Cty., 198 F. App'x 893, 897 (11th Cir. 2006); see also Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991) ("We do not dispute [a prison official's] right to rely on medical professionals for clinical determinations.") (emphasis omitted).

Here, however, Plaintiff does more than allege that Defendants Shepard and McGrew deferred to medical judgment.

---

[12] Generally, collective knowledge is insufficient to satisfy a claim for deliberate indifference. Although multiple defendants are named, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew]." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). The Court notes that this is a close call because Plaintiff alleges he complained numerous times to several ASMP Individual Defendants. Overall, however, Plaintiff contends that each of the ASMP Individual Defendants were aware of information concerning Plaintiff's medical history and prescription. At this stage, based upon his alleged individual interactions with the ASMP medical personnel, the Court must accept as true Plaintiff's allegation that the ASMP Individual Defendants were aware of the information alleged.

Instead, Plaintiff alleges that Defendants Shepard and McGrew deferred to the ASMP medical personnel knowing that the medical staff was acting with deliberate indifference to Plaintiff's serious medical need. The alleged conduct, which the Court is obligated to accept, states a direct claim against Defendants Shepard and McGrew for deliberate indifference as direct actors. See Goebert v. Lee Cty., 510 F.3d 1312, 1328 (11th Cir. 2007) (reversing grant of summary judgment for prison official in part because "[r]ather than take any action or even inquire into the situation, [prison official] referred [inmate] back to the same medical staff that [he knew] had ignored her daily requests for aid").

### iv. ASMP Supervisors – Failure to Supervise

The Eleventh Circuit has solidly established that "supervisory officials are not liable under [Section] 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted). To impose supervisory liability for Section 1983 violations, a plaintiff must show either (1) "the supervisor personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between the actions of a supervising official and the alleged

constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

The Court begins with Drs. Young and Fountain. Plaintiff alleges sufficient facts to infer that each personally participated in his treatment and were aware of his medical and prescription history. For the reasons stated above in determining Plaintiff states Section 1983 claims against ASMP medical personnel, Plaintiff has also stated claims against Drs. Young and Fountain for supervisory liability through their alleged personal participation in his treatment.

The same cannot be said for Wardens Shepard and McGrew. Plaintiff has not alleged facts that the Wardens personally participated in decisions regarding his treatment.[13] Therefore, Plaintiff may only advance his supervisory liability theory against Defendants Shepard and McGrew by establishing a "causal connection" between the wardens actions and the constitutional violation.[14] The necessary "causal connection" may be established

---

[13] Although the Court concluded in Section III(A)(2)(a)(iii), *supra*, that Plaintiff states a claim against Wardens Shepard and McGrew directly for deferring to ASMP medical personnel treatment they knew to be violating Plaintiff's constitutional rights, the Court finds a difference between Warden Shepard and McGrew's alleged constitutional violations and the alleged supervisory liability through the constitutional violations of the ASMP medical staff. Said another way, there are no allegations that Wardens Shepard and McGrew personally participated in ASMP medical personnel's knowing deprivation of Plaintiff's medication and treatment but, instead, committed their own constitutional violations by deferring to ASMP medical personnel's treatment knowing it to be a constitutional violation.

[14] The following "causal connection" analysis equally applies to Drs. Young and Fountain.

23

by showing: (1) "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so"; (2) "a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (internal quotation marks omitted) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003)). Under any of the enumerated theories for supervisory liability, "the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Id. (citation omitted).

First, Plaintiff has not alleged a history of widespread abuse. Second, although Plaintiff asserts in conclusory terms that a policy or custom resulted in deliberate indifference, no factual allegations yield that interpretation. "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents . . . or multiple reports of prior misconduct by a particular employee . . . ." Piazza v. Jefferson Cty., 923 F.3d 947, 957 (11th Cir. 2019) (internal citations omitted). "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several

subordinates." Id. (quoting Craig v. Floyd Cty., 643 F.3d 1306, 1312 (11th Cir. 2011)); accord Goebert, 510 F.3d at 1332 (finding plaintiff failed to meet "'extremely rigorous' standard for supervisory liability" when plaintiff failed to show any other inmate exposed to policy or custom violating the Eighth Amendment).

The Court finds, however, that Plaintiff states a claim under the third prong. Plaintiff alleges that Defendants Shepard and McGrew had supervisory authority over the ASMP medical personnel and knew all of the same facts the medical staff did regarding Plaintiff's medical history, prescription, continued complaints, and the time lapsed. (Compl., ¶ 60.) Accepting these allegations as true, a factfinder could conclude that Wardens Shepard and McGrew were aware that ASMP medical personnel's conduct violated the Constitution and Defendants Shepard and McGrew failed to proscribe that conduct. Contra Cottone, 326 F.3d at 1362 ("[S]upervisors were not on any notice of [subordinates'] unconstitutional conduct so as to put the supervisors on notice of the need to correct or stop the conduct of [subordinates] by further training or supervision."); Cameron v. Allen, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) ("The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff, or to intervene in treatment decisions where they have no actual

knowledge that intervention is necessary to prevent a constitutional wrong.").

### v. ASMP – Failure to Train

Next, Plaintiff alleges that Defendants Young, Fountain, Shepard and McGrew are liable for failure to train. "As the Supreme Court has indicated, 'a supervisor's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" Keith v. DeKalb Cty., 749 F.3d 1034, 1053 (11th Cir. 2014) (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). "[U]nder [Section] 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [supervisors] come into contact.'" Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Therefore, an allegation of "a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes his or her employees to violate citizens' constitutional rights,'" and, despite that knowledge, "the supervisor chose to retain that training program." Id. at 1052 (quoting Connick, 563 U.S. at 61). "Actual or constructive notice" generally requires "a pattern of similar constitutional violations by untrained employees." Id. at 1053 (quoting Connick, 563 U.S. at 62).

Plaintiff alleges no non-conclusory facts that demonstrate a pattern of ASMP personnel violating inmates' constitutional rights. Instead, Plaintiff relies on a particular exception set forth in Harris. 489 U.S. at 390 n.10. The exception addresses "moral certainties," such as the need to train police officers in the constitutional limitations of deadly force. Id. No such moral certainty is present regarding Plaintiff's treatment. Medical personnel inherently receive training regarding prescribing medication, such as Plavix's use for treating clotting issues, outside of the prison setting. Additionally, Plaintiff does not allege a pattern of constitutional violations by untrained employees. The Complaint's allegations do not meet the moral certainty exception or otherwise state a constitutional claim for failure to train.

### b. *Clearly Established*

Qualified immunity bars government officials' liability for civil damages so long "as their conduct does not violate clearly established statutory or constitutional rights." Morris v. Town of Lexington, 748 F.3d 1316, 1321 (11th Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). A right is clearly established where it would be clear to a reasonable person in the defendant's position that his conduct was unlawful in the situation he confronted. Cottone, 326 F.3d at 1359; see also Valderrama v. Rousseau, 780 F.3d 1108, 1112-13 (11th Cir. 2015) ("A principle of

constitutional law can be 'clearly established' even if there are 'notable factual distinctions between the precedents relied on and the cases then before the [c]ourt, so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights.'") (quoting Holloman, 370 F.3d at 1277).

As stated herein, Plaintiff has pleaded a violation of his rights under the Eighth Amendment against ASMP personnel. The remaining question is whether the state of the law at the time of the alleged constitutional violation gave ASMP Defendants "fair warning" that the treatment in question was unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 731 (2002). Defendants argue that when viewing the specific alleged conduct, they were not on notice their conduct was unconstitutional.

This district has determined "a reasonable person would know that an exceptionally long delay in providing a diabetic inmate with medical care in light of a serious, painful leg injury constitutes a constitutional violation." Walsh v. Jeff Davis Cty., No. CV 210-075, 2012 WL 12952564, at *16 (S.D. Ga. Mar. 29, 2012) (ten-day delay) (citing Brown, 625 F.2d at 1538-39; Aldridge v. Montgomery, 753 F.2d 970, 972-73 (11th Cir. 1985)). Considering that Walsh addressed diabetes, a known prior condition, the same logic applies to an inmate with a known clotting condition being deprived of anti-coagulant medication for approximately one month.

28

Based on the foregoing, the ASMP Individual Defendants' qualified immunity defense fails at this stage.

## B. State Law Claims – Counts II–V

Additionally, Plaintiff asserts a number of state law tort claims against Defendants. (Compl., ¶¶ 67-91.) Defendants argue that official immunity applies to the Individual Defendants for any violation of the state law claims. (Br. Supp. Partial Mot. to Dismiss, at 23-24.) Further, Defendants maintain the Georgia Tort Claims Act ("GTCA") prohibits recovery of punitive damages. (Id. at 25.) The Court addresses each of Defendants' advanced reasons for dismissal.

### 1. Official Immunity

Defendants contend that the Individual Defendants named are entitled to official immunity under the Georgia Tort Claims Act ("GTCA"). Plaintiff failed to respond to this argument in his response brief, arguably waiving any opposition to Defendants' argument. See Zarate v. U.S. Attorney Gen., 307 F. App'x 289, 290 (11th Cir. 2009) ("A party . . . waives an issue by failing to make any substantive arguments with respect to that issue.") (citing Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989)); Horton v. Delta Air Lines, Inc., No. 1:07-cv-1069-WSD-LTW, 2008 WL 11320068, at *2 n.3 (N.D. Ga. Aug. 15, 2008) (citing Iraola & CIA, S.A. v. Kimberly-Clerk Corp., 325 F.3d 1274, 1284 (11th Cir. 2003); Wilkerson v. Grinnell Corp., 270 F.3d

1315, 1322 (11th Cir. 2001)); <u>Blankenship v. City of Russellville</u>,
No. CV-07-J-0740-IPJ, 2008 WL 11379948, at *3 (N.D. Ala. Apr. 7,
2008) (finding claim abandoned in part because the plaintiff failed
to respond to defendant's summary judgment arguments as to that
claim); <u>see</u> <u>also</u> <u>Moore v. Guzman</u>, 362 F. App'x 50, 53 (11th Cir.
2010) ("[L]itigants abandon arguments raised for the first time in
their reply briefs.") In his sur-reply brief, Plaintiff claims
deciding the immunity question now is premature because it is
unclear whether the Individual Defendants are independent
contractors or employees of the state. (Doc. 49, at 7.)
Plaintiff's argument belies his contention in the Complaint that
"[a]ll Defendants were, at all times relevant to this Action,
persons acting under color of state law." (Compl., ¶¶ 49-50.)

Pursuant to O.C.G.A. § 50-21-25(a), "A state officer or
employee who commits a tort while acting within the scope of his
or her official duties or employment is not subject to lawsuit or
liability therefor." At all times alleged, Plaintiff was a
prisoner of the State of Georgia and subject to medical care as
such. In <u>Shekhawat v. Jones</u>, the Supreme Court of Georgia held
that physicians acting within the scope of their state employment
were entitled to official immunity. 746 S.E.2d 89, 93 (Ga. 2013).
Although Plaintiff argues, in his sur-reply brief, that some of
the personnel may be independent contractors, the Complaint is
void of allegations to that effect. <u>Cf.</u> <u>id.</u> at 94 ("[W]e observe

30

that this case does not present a situation involving physicians who are state-employed but also engage in some type of outside private practice."). Plaintiff presents no additional arguments that official immunity is inapplicable here.[15] Accordingly, the Individual Defendants are entitled to official immunity under Georgia law as to Plaintiff's state law claims.

2. Punitive Damages

Finally, Plaintiff fails to state a claim for punitive damages to the extent the punitive damages are derivative of his alleged state law claims. First, under O.C.G.A. § 50-21-30, the GTCA prohibits recovery of punitive damages. Second, "punitive damages are not allowed against a governmental entity." City of Kingsland v. Grantham, 805 S.E.2d 116, 119 (Ga. Ct. App. 2017) (citing MARTA v. Boswell, 405 S.E.2d 869, 869-70 (Ga. 1991)). In response, Plaintiff cites Durden v. Newton Cty, No. 1:14-CV-01163-RWS, 2015 WL 71446 (N.D. Ga. Jan. 5, 2015), to argue that punitive damages are permitted here. (Opp'n to Partial Mot. to Dismiss, at 7.) In Durden, the court denied a private corporation's motion to dismiss punitive damages against it. Durden, 2015 WL 71446, at *1, *4. The facts presented are distinguishable from Durden because Plaintiff only named governmental entities in the Complaint and

---

[15] Plaintiff does not assert that the actions in question were ministerial or Defendants acted with "actual malice or actual intent to cause injury" so as to pierce official immunity protections. Richardson v. Quitman Cty., 912 F. Supp. 2d 1354, 1381 (M.D. Ga. 2012) (applying Georgia law).

does not allege private entities were responsible for providing care. Accordingly, Plaintiff fails to state a claim for state law punitive damages.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' partial motion to dismiss Plaintiff's Second Amended Complaint (Doc. 43) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the following parties and claims are **DISMISSED**:

(1) Defendants Warden Bruce Chatman, Dr. Edward Burnside, and Nurse Mary Gore are dismissed from the lawsuit entirely;

(2) To the extent Plaintiff asserts Section 1983 claims against Defendants GDC and BOR, Plaintiff's claims are dismissed;

(3) To the extent Plaintiff asserts Section 1983 claims against the ASMP Individual Defendants in their official capacities, Plaintiff's claims are dismissed;

(4) To the extent Plaintiff asserts Section 1983 failure to train claims against Defendants Dr. Kimberly Fountain, Dr. Timothy Young, Warden Stan Shepard, and Warden Betty McGrew, Plaintiff's claims are dismissed;

(5) To the extent Plaintiff asserts state tort claims, Counts II-V, against the Individual Defendants, Plaintiff's claims are dismissed; and

(6) Plaintiff's claim for punitive damages premised upon the alleged state tort claims is dismissed as to all Defendants.

Consequently, the following claims **SHALL PROCEED** against the following Defendants:

(1) Plaintiff's Section 1983 claims against the ASMP Individual Defendants in their individual capacities as direct actors;

(2) Plaintiff's Section 1983 claims for supervisory liability against Defendants Dr. Kimberly Fountain, Dr. Timothy Young, Warden Stan Shepard, and Warden Betty McGrew;

(3) Plaintiff's state law claims against the governmental entity defendants; and

(4) Plaintiff's claim for punitive damages premised upon Plaintiff's remaining Section 1983 claims.

The Clerk is **DIRECTED** to **TERMINATE** Defendants Chatman, Burnside, and Gore as parties and any deadlines and motions pertaining to them. The remaining Defendants **SHALL** file their answers to Plaintiff's Second Amended Complaint within **FOURTEEN DAYS** of this Order. The Parties are reminded of United States Magistrate Judge Epps's Order dated September 20, 2018, regarding the Rule 26(f) Report. (Doc. 47.)

**ORDER ENTERED** at Augusta, Georgia, this 24th day of September, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA